Amadeo Murga, Juez Ponente
*760 TEXTO COMPLETO DE LA SENTENCIA
Iván Avilés Medina recurre de una resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) la cual denegó su solicitud para que se le concediera un aumento o diferencial de salario por dificultad de reclutamiento retroactivo al 16 de octubre de 1993 fecha en que fue reclutado.
En vista de que el aumento se le había concedido con carácter prospectivo al 16 de febrero de 1996, J.A.S.A.P. consideró que se le había concedido el remedio al recurrente y que su apelación se había tornado académica. En reconsideración mantuvo su determinación. El peticionario recurrió al Tribunal de Primera Instancia, Sala Superior de San Juan. El fue remitido entonces a nosotros, conforme a las disposiciones del Artículo 9.004 de la Ley Número 248 del 25 de diciembre de 1995, mediante resolución del 19 de julio de 1996 (Hon. Carlos Rivera Martínez, Juez Administrador).
Por résolución del 29 de agosto, concedimos a la recurrida un término de veinte (20) días para presentar oposición al recurso. Finalmente, el Procurador presentó su informe el 17 de octubre. Evaluadas las posiciones de las partes procedemos a resolver el mismo.
LOS HECHOS
Iván Avilés Medina trabajaba en el Departamento de Salud en el cargo de Administrador de Salud II, Nivel Terciario en la Comunidad Terapéutica Guerrero de Aguadilla. Su categoría de empleado era uno de carrera y su status era uno regular. Tenía un sueldo de $1,390. El 16 de octubre de 1993 fue nombrado al puesto de Administrador de Servicios de Salud III en el Hospital Sub-Regional de Aguadilla con un sueldo de $1,393. El 12 de noviembre de ese año, el Director Médico de la Sub-Región de Salud de Aguadilla, Dr. Jaime N. Sepulveda, se comunicó mediante carta con el Sr. José Serrano Gadea, Director Ejecutivo de la Administración de Facilidades y Servicios de Salud (A.F.A.S.S.), solicitando se autorizara un diferencial en sueldo al Sr. Avilés Medina equivalente a seis tipos retributivos en la escala correspondiente a la clase de Administrador de Servicios de Salud III con una retribución de $328. Justificó la solicitud, entre otras cosas, a base de que "es indispensable de que se autorice el diferencial en sueldo al Sr. Avilés Medina, ya que este puesto es requerido por la Joint Commission para la acreditación de nuestro hospital. Además tenemos escasez de este personal por ser uno de difícil reclutamiento. Este diferencial será financiado con el sobrante del puesto E-0743 de Administrador de Servicios de Salud III, el cual tiene una economía de $438. Agregó en base a lo. antes expuesto, solicitamos se autorice el diferencial al Sr. Avilés Medina y que el mismo sea efectivo a la fecha de su nombramiento". 
Poco más de un año después, el 6 de noviembre de 1994, el Dr. Jaime N. Sepulveda volvió a escribir al Ledo. José Serrano Gadea solicitándole la reconsideración del caso del Sr. Avilés Medina y reiterándose los fundamentos que había consignado en su carta del año anterior. El 23 de diciembre de 1994, se certificó la disponibilidad del recurso presupuestario para cubrir el aumento de $328. Esta certificación aparece suscrita por el Sr. Roberto Guzmán Cortés. Posteriormente, mediante comunicaciones del 27 de enero de 1995, 10 de febrero de 1996 y 27 de febrero del mismo año el Sr. Avilés Medina escribió al Ledo. José Serrano Gadea *761 insistiendo en la necesidad de que se le concediera el diferencial. En la carta, alegó que "acepté dicha oferta, ya que en la Secretaría Auxiliar de Salud Mental devengaba un sueldo de $1,390 mensuales y el sueldo que ahora devengo de $1,393 mensuales no era suficientemente atractivo como para aceptar un cargo de mayor responsabilidad a nivel de la Sub-Región de Salud de Aguadilla". En la carta del 27 de febrero de 1995, señaló que la oferta del diferencial se hizo en forma verbal al momento de su reclutamiento, conscientes tanto el Director Médico Regional como el peticionario que la aprobación del Director Ejecutivo de esto dependía de A.F.A.S.S.
El 30 de marzo de 1995, el Sr. Avilés Medina escribió esta vez a la Dra. Carmen Feliciano de Melecio, Secretaria de Salud, insistiendo en su planteamiento y hacienda referencia a la oferta verbal que le había hecho el Director Regional cuando fue reclutado. Le mencionó que había pasado más de un año y cinco meses y aún no había recibido el diferencial. Se quejó de que esto constituía un fraude y engaño.
El 7 de abril siguiente, el Dr. Jaime N. Sepulveda escribió al peticionario, Sr. Avilés Medina, indicándole lo siguiente:

"7 de abril de 1995

Ledo. Iván Avilés Medina

Administrador Hospital Sub-Regional de Aguadilla

Estimador [sic] Ledo. Avilés:

Haciendo referencia a la comunicación fechada 30 de marzo de 1995 que usted envió a la Dra. Carmen Feliciano de Melecio, Honorable Secretaria de Salud, deseo señalar lo siguiente:

En el mes de septiembre de 1993 se procedió con una selección de candidatos que bajaron en décima para el puesto H-0743. En la misma se entrevistaron los licenciados, Francisco Martínez [dice en el original Matías y corregido en bolígrafo Martínez] Rodríguez, María Avevedo Reyes y usted. En el proceso de entrevistas usted fue seleccionado para ocupar dicho puesto. Durante ese proceso no se le ofreció ningún diferencial en sueldo para aceptar el mismo.

Posiblemente mediante comunicación verbal usted me haya hecho una petición sobre la otorgación de un diferencial en sueldo. Petición que yo entendí se podía gestionar dependiendo de la aprobación del Sr. Serrano Gadea.

Dicha carta de recomendación fue enviada al Sr. Serrano Gadea el cual era Director Ejecutivo de AFASS, el 12 de noviembre de 1993.

El señalamiento de referencia fue recibido por la Oficina de Personal de AFASS para la evaluación técnica y así determinar si según la reglamentación procedía de acuerdo al plan de Clasificación y Retribución de la Agencia.

El planteamiento fue devuelto a la Región del Sr. Edwin Figueroa Ruiz sin explicación ni determinación de planteamiento sometido.

El 23 de diciembre de 1994 sometí una reconsideración de su caso sobre el mismo diferencial en sueldo.

Entendemos que su caso está siendo re-evaluado por la Oficina de Nivel Central de acuerdo a la reglamentación vigente."

El 6 de abril de 1995, la Dra. Carmen Feliciano de Melecio contestó la comunicación indicándole al Sr. Avilés Medina que las reclasificaciones debían esperar hasta que se tuviera un informe final de los fondos disponibles para tomar las decisiones al Informe; que tan pronto "tengamos esta decisión, procederemos a *762 considerar los casos". Esto motivó la apelación del Sr. Avilés Medina a J.A.S.A.P. la cual fue presentada el 3 de mayo de 1995. El 7 de agosto del mismo año, la parte apelada, Departamento de Salud, contestó allanándose a que se concediera el diferencial solicitado, pero con carácter prospectivo. Ante esa posición, J.A.S.A.P. emitió una resolución archivando la apelación por considerarla académica. Resolvió que la parte apelada debía otorgar el diferencial por difícil reclutamiento al apelante con carácter prospectivo a la fecha en que la Oficina de Presupuesto y Gerencia lo apruebe. El apelante solicitó reconsideración alegando que el conceder diferencial con carácter prospectivo era arbitrario. Finalmente, el 19 de marzo de 1996 le fue concedido al peticionario el diferencial, esta vez por la cantidad de $420 efectivo el 16 de febrero del presente año.
En su recurso, el peticionario sostiene que el diferencial fue unas condiciones que él consideró para aceptar el nombramiento y que de no haber mediado tal promesa no hubiera aceptado el mismo. Considera que el negarle el diferencial con efecto retroactivo constituye un abuso de discreción y un acto arbitrario. Sostiene, además, que la Junta resolvió el caso sin celebrar una vista en los méritos para permitirle presentar prueba en apoyo de sus planteamientos.
La cuestión planteada ante nos es si el diferencial que le fue concedido al peticionario el 16 de febrero de 1996 debe hacerse retroactiva a la fecha de su reclutamiento, o si por el contrario es únicamente'prospectivo a la fecha en que se le concedió.
I
En Villamil Suárez v. Departamento de Transportación y Obras Públicas, 93 J.T.S. 116, _ D.P.R. _ (1993), nuestro Tribunal Supremo tuvo la ocasión de explicar el propósito y la naturaleza del llamado diferencial:

"Mediante la aprobación de la Ley de Retribución Uniforme de 1974, la legislatura estableció escalas de sueldos a ser asignadas por el Director de la Oficina de Personal del Gobierno a las clases de puestos incluidas en un programa de clasificación, el cual agruparía los puestos gubernamentales tanto del Servicio por Oposición, como del Servicio en Oposición, de acuerdo a sus deberes y responsabilidades. Ley Núm. 345 de mayo 12 de 1947, 3 LPRA §650.

En lo que concierne a los nombramientos originales, es decir a personas que van a ser nombradas por vez primera, la Ley de Retribución Uniforme del 1974 dispuso que, como regla general, dichas personas recibirán el tipo mínimo (dispuesto en la escala salarial) fijado para la clase a que esté asignado su puesto.. Sin embargo, en lo pertinente al caso de autos, dicho estatuto dispone que cuando... las condiciones de trabajo lo justifiquen, o las dificultades extraordinarias en el reclutamiento y/o la retención de personal para determinados puestos justifiquen el uso de incentivos adicionales, se podrá autorizar un diferencial en sueldo fuera de la escala" según lo establezca el Director de la Oficina de Personal mediante reglamento. 3 L.P.R.A. § 7591. El llamado diferencial, según establece la propia ley, corresponde a una compensación especial."

La Ley de Retribución Uniforme de 1974 fue posteriormente derogada por la Ley Núm. 89 del 12 de julio de 1979 conocida como la ley de Retribución Uniforme. Esta ley también, incorpora el de diferencial. En lo pertinente dispone: 

"(1) Diferenciales

Como norma general toda persona que reciba un nombramiento percibirá como sueldo el tipo mínimo de la correspondiente escala.

La Oficina, en el caso de la Administración Central, y los Administradores Individuales podrán utilizar la concesión de sueldos diferenciales cuando la ubicación geográfica del puesto, las condiciones extraordinarias de trabajo, los conocimientos especiales requeridos o la dificultad extraordinaria para el reclutamiento y retención de personal en determinados puestos justifique el uso de incentivos adicionales al sueldo ordinario. El diferencial constituirá una compensación especial, adicional y separada del sueldo regular, que se eliminará cuando desaparezcan las circunstancias que justificaron su concesión. [...]"

*763 Por otro lado, pero en la misma Ley.89, en su artículo 11(13) define la palabra diferencial de la siguiente manera:
"(13) Diferencial - Significará la compensación que se podrá conceder cuando la ubicación geográfica del puesto, las condiciones especiales requeridas o las dificultades extraordinarias en el reclutamiento y/o retención de personal para ciertos puestos se justifiquen." [...] (Enfasis suplido).
En la Exposición de Motivos de la referida Ley 89, se señala que ésta promueve la uniformidad, la equidad y la justicia en la fijación de los sueldos de todos los empleados del servicio público. La Ley 89, en su artículo 3, establece que la Administración Central de Personal podrá crear los reglamentos necesarios de manera que la implantación de la referida Ley 89, se materialice por vía de los mismos.
Conforme a la ley se aprobó el Reglamento de Retribución Uniforme el 7 de junio de 1984 con vigencia el 7 de julio del mismo año.
La sección 4.8(11) de dicho Reglamento establece lo siguiente:

"11. Diferenciales

El Director, en el caso de la Administración Central, y cada Autoridad Nominadora, en el caso de los Administradores Individuales, podrán autorizar la concesión de diferenciales en sueldo a favor de los empleados que ocupen puestos en clases comprendidas en el plan de clasificación para el servicio de carrera, cuando estén presentes las condiciones que establece la Ley de Retribución Uniforme, a saber:

"a) Cuando haya dificultad extraordinaria para reclutar o para retener personal en determinados puestos.

b)Cuando la ubicación geográfica del puesto lo justifique.

c)Cuando las condiciones extraordinarias de trabajo lo justifique.

d)Cuando el puesto en particular requiera algún o algunos conocimientos especiales.

e)Cuando un empleado, mediante designación oficial, haya desempeñado en forma interina, todos los deberes y responsabilidades normales de un puesto en el mismo servicio con clasificación superior al que ocupa en propiedad por un período ininterrumpido que exceda de tres meses, y que al momento de tal designación reúna los requisitos para el puesto si se tratare de un empleado de carrera.

Conocimientos especiales son aquellos que tienen relación directa con los deberes y responsabilidades de algún puesto en particular y que por consiguiente, son imprescindibles para desempeñarse en éste, pero que no son necesarios para todos los puestos de la clase. Son conocimientos adicionales a los requisitos mínimos de la clase y que sólo son necesarios para determinados puestos de la clase.

Como norma general los diferenciales tendrán carácter prospectivo."

Es a la luz de lo contenido en el Reglamento que el Procurador General en su informe entiende que I.A.S.A.P. estuvo acertada en no conceder el diferencial al peticionario con carácter retroactivo. El Procurador señala que la concesión de tales diferenciales es de carácter discrecional y además tiene un presupuestario. El concederlos en forma retroactiva podría, ajuicio del Procurador General, trastocar el presupuesto de la agencia.
Si bien es que como norma general los diferenciales deben ser concedidos prospectivamente, la concesión prospectiva debe hacerse siempre tomando en consideración los propósitos expresados en la Exposición de Motivos de la Ley 89, a los efectos de que se debe promover la uniformidad, la equidad y la justicia en la fijación de los sueldos de los empleados. Aunque los diferenciales en salario de carácter prospectivo, según está son ordinariamente dispuesto en el Reglamento, una vez se le ha prometido al empleado que se le gestionará un *764 diferencial, la agencia viene obligada a gestionar y procesar el mismo dentro de un período razonable contado a partir del nombramiento del empleado al nuevo cargo. En el presente caso, el diferencial viene a concederse dos años, tres meses después de haberse nombrado al empleado al cargo con la expectativa de recibir el diferencial. Según el Dr. Jaime Sepúlveda, A.F.A.S.S. no actuó sobre sus repetidas solicitudes y devolvió el planteamiento a la Región de Aguadilla sin explicación ni determinación del planteamiento sometido.
Resolvemos, por lo tanto, que en los casos en que se le promete a un empleado un diferencial sujeto a la aprobación del Director Ejecutivo de A.F.A.S.S., el mismo, aunque sea de carácter prospectivo, de concederse el diferencial, deberá ser concedido con razonable prontitud. Ciertamente, un empleado que acepta un cargo bajo la expectativa de que se le concederá un diferencial, no debe estar sujeto a una espera indefinida por el mismo. En el presente caso, no había impedimento económico para concederlo, según lo acredita la certificación expedida por el Sr. Roberto Guzmán Cortés, Director de Personal del Hospital Regional de Aguadilla del 23 de diciembre de 1994.
El peticionario hizo numerosas gestiones durante el curso de los dos años y tres meses para que se aprobara el diferencial y nunca se le dieron razones satisfactorias. Resolvemos que un término de seis meses era uno más que suficiente para disponer del planteamiento del peticionario. Véase, a manera de comparación, el término de seis meses concedido a una agencia para resolver un procedimiento adjudicativo, 3 L.P.R.A., sec. 2163(g). Resolvemos, por tanto, que el peticionario tiene derecho como cuestión de equidad a que se le otorgue el diferencial en forma retroactiva a una fecha que no exceda de los seis meses a partir de la fecha en que comenzó a ocupar el nuevo cargo.
A tenor con lo anterior, expedimos el auto, revocamos la resolución de J.A.S.A.P. y ordenamos que el diferencial concedido deberá hacerse efectivo al 16 de abril de 1994, fecha en que se cumplieron los seis meses desde que el peticionario ocupó su nuevo cargo.
Regístrese y notifíquese.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 96 DTA 181
1. Apéndice, pág. 38.
2. Apéndice, págs. 36-37
3. Apéndice, pág. 34.
4. Apéndice, pág. 20.
5. Apéndice, pág. 13.
6. Iván Avilés Medina v. Depto de Salud, DS-95-05-1127, resolución del 29 de septiembre de 1995, pág. 2.
7. 3 L.P.R.A. sees. 760 et seq.
8.3 L.P.R.A. sec. 760(f)(1).
9. 3 L.P.R.A. see. 760 (j)(13).
10. L.P.R.A. see. 760 (b).